**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| AMY JETT, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 3:18-cv-1366 |
| WARRANTECH CORPORATION and AMT WARRANTY CORPORATION, | ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Amy Jett, individually and on behalf of all others similarly situated, through her undersigned counsel, alleges for her Class Action Complaint against Defendants, Warrantech Corporation and AMT Warranty Corporation, based upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including the investigation conducted by her counsel as follows:

## NATURE OF THE ACTION

1.    This action arises from the unfair, deceptive, and unlawful business practices of Defendants with respect to the advertising, marketing, and sales of warranty plans known as extended service plans ("ESPs").

2.    As alleged herein Defendants engaged in unconscionable, unfair, and/or deceptive acts and practices related to the extended service plans including but not limited to selling ESPs that purport to provide immediate to the consumers who purchase them.

3.    Despite the express representations, promises and contractual obligations to the contrary alleged herein, Defendants routinely and uniformly fail to provide purchasers any benefits or service under the plans when products fail during the original manufacturer's warranty.

4.     The above-described practices, alleged in further detail below, give rise to Plaintiff's and the putative class' claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (Count I), breach of contract (Count II), unconscionability (Count III), and unjust enrichment (Count IV).

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), as this is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which members of the class, which number in excess of 100, are citizens of states different from Defendants.

6.     Jurisdiction over Defendants is proper under 735 ILCS 5/2-209(b)(4) (corporation doing business within this State), and Section 2-209(c) (any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States).  735 ILCS 5/2-209(b)(4), and (c).

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in this district.

## PARTIES

8.     Plaintiff, Amy Jett ("Plaintiff" or "Ms. Jett"), is a natural person domiciled in Glen Carbon, Illinois.  Plaintiff is a member of the putative class defined herein.

9.     Defendant Warrantech Corporation ("Warrantech") is a Delaware corporation with its principal place of business in Bedford, Texas.  Warrantech provides extended service plans (ESPs) and warranty programs for retailers, dealers, distributors, and manufacturers in numerous consumer and automotive markets.  Warrantech is a subsidiary of AmTrust Financial Services, a multinational property and casualty holding company.

- 2 -

10.     Defendant AMT Warranty Corporation ("AMT") is a Delaware corporation with its principal place of business in Cleveland, Ohio.  AMT provides extended service plans, original equipment manufacturers' warranties, and warranty card programs for businesses and consumers in the United States.  It operates as a subsidiary of AmTrust Financial Services.[1]

## BACKGROUND

11.     Defendants provide warranty products and administrative services for manufacturers, retailers, dealers, and distributors of automotive and consumer products sectors.

12.     Defendants develop and market service contract plans and administrative services for automobiles, light trucks, powersports, watercraft, recreational vehicles, and mobility vans through franchised automobile dealers, independent automobile dealers, leasing companies, financial institutions/credit unions, and dealer/agent insurance company captives.

13.     Defendants also engage in the underwriting and administration of service contracts and extended warranties on various consumer products, such as consumer electronics, computers, peripherals and accessories, power tools, lawn and garden equipment, fitness equipment, jewelry, appliances, home office equipment, furniture, optics and eyewear, telecommunications, and yellow goods. In addition, it offers boat coverage; and service plans directly to consumers.

14.     Defendants' business is divided into two divisions--automotive, which operates domestically, and consumer products, which operates both domestically and internationally. Defendants' automotive business consists of marketing and administering vehicle service programs that offer coverage for terms ranging between three months and 84 months. The company's consumer products segment develops, markets, and administers extended warranties

---

[1] For the sake of convenience, Defendants are sometimes collectively referred to as "Warrantech."

and product replacement plans for a range of household appliances and consumers electronics, such as televisions and computer equipment. Part of Defendants' consumer products division also includes home warranties, which cover the mechanical breakdown of home systems such as plumbing, heating, and air-conditioning systems.

15.     A service plan is a contract to purchasers of products for an additional fee. A service plan is a separate policy from the manufacturer's warranty. While the typical service plan does require preventative and routine maintenance to be taken in accordance with the manufacturer's warranty, it does not actually require a product to fail or malfunction under the same conditions. Service plans are also active from the date of purchase, meaning products can be purchased with service plans that is before or at the same time as the manufacturer's warranty. The key distinction is that a warranty strictly covers defects in workmanship and materials, while service plans cover product failure in general with a list of exclusions. To help differentiate from manufacturer's warranties, service plans occasionally come with additional benefits, such coverage for theft or accidental damage, replacements if a product fails a given number of times ("no lemon policy"), access to additional services, priority service and technical support.

16.     Defendants market, sell, and administer extended service plans (ESPs) to consumers. According to Defendants' website, its ESPs are designed to help manage the cost and inconvenience of product failures.  Defendants further purport that the ESPs can be purchased for just a fraction of what a consumer would pay for service repair and, in some cases, the savings can add up to hundreds of dollars.

**DEFENDANTS' REFUSAL TO COVER DEFECTIVE PRODUCTS**

17.     Defendants sell their ESPs through a number of major retailers, including H.H. Gregg, Inc.

18.     H.H. Gregg was a retailer of consumer electronics and home appliances in the Midwest, Northeast, and Southeast United States. Its retail offerings included home entertainment video and audio products, computers, and other selected consumer electronics; home appliances, such as refrigerators, ranges, dishwashers, freezers, washers, and dryers; and other products and services, including mattresses.

19.     The brand was purchased from the company's bankruptcy trustee for $400,000 and in August 2017, it was revived as an online business. H.H. Gregg has closed all stores except for the one in New Jersey, which is their last location operating.

20.     When buying products from H.H. Gregg, consumers can purchase extended service plans to cover said products. Those extended service plans are underwritten and issued by Defendants. The plans themselves are in embodied in detailed, uniform contractual provisions.

21.     Upon information and belief, the terms of these ESPs are identical in all material respects.

22.     Defendants purport to repair or replace the covered product in the event the product is rendered inoperable during the term of the service agreement.  It is the express purpose of the service plan to provide coverage in case of a product failure.

23.     The ESPs purport to provide coverage beginning on the date of product purchase. Specifically, *inter alia*, the ESP brochure accompanying the product states, "*Coverage begins on the date of purchase.*"  Premium Service Plan (emphasis added).

24.     The contract itself states, "*Coverage under this Service Agreement begins on the date of product purchase or date* of installation by the selling retailer . . . and continues for the period of time defined on Your sales receipt. This Service Agreement is inclusive of the manufacturer's warran*y*; it does not replace the manufacturer's warranty, but *provides certain*

*benefits during the term of the manufacturer's warranty*." Extended Service Protection Agreement (emphasis added).

25.     Notwithstanding the above representations, the actual policy and practice of Defendants is to not provide *any* benefits or service for products that fail during the original manufacturer's warranty, despite their representations and misleading statements to the contrary.

26.     Defendants have been the subject of a *litany* of complaints, from a large number of dissatisfied customers, who have complained to Defendants about its' unlawful and deceptive business practices set forth herein.

27.     The Consumers Affairs website, which provides a forum for consumers to post reviews of their experiences with a brand, includes numerous complaints from consumers regarding the alleged practices set forth herein.  *See hhgregg Consumer Complaints and Reviews,* Consumer Affairs, https://www.consumeraffairs.com/retail/hh_gregg.html (last visited June 13, 2018). Examples of such complaints appear below (errors in original):

**Darlene of Indianapolis, IN on March 11, 2017**

Getting service under extended warranty purchased pulling teeth. Get the run around or can't place call due to how written up or not at home in front of appliance. Why do I need to be in front of appliance when they are able to pull up all the information or tell you that they can place call but would have to pay service call. Twice I have called both times got run around that I ended getting repairman and ending up paying for repairs that should of been covered under warranty since I needed use of appliance. Spent lunch hour trying to get appointment under warranty. No luck. Told and order part. Once arrived put on. Still didn't work. Was called. Was told since I attempted to put part on couldn't place service call.

**Angela of Louisville, KY on March 27, 2017**

I phoned hhgregg on March 17th 2017 and explained that my 1 and a half year old Maytag washer was not operating. I explained that the electronic message stated DL which by looking in the customer handbook in the troubleshooting it stated that that meant Door Lock.

I spoke with a agent at the following number 877-456-9643. I explained that I had paid $149.00 for the 5 yr extended warranty. I was then told I would receive a call in 1-2 business days. I waited 3 business days and phoned back to the same number I had called with my claim. I was then told that there was a search for a repair company that would be getting back to me the next day for sure. That also, did not happen.

I then phoned again the next day on March 23rd and was told that Park Appliance Repair center would be here Friday the 24th. I waited until 2:30 pm and I phoned the repair company and asked what time they would be at my house to fix my washer. I was then told it would now be Monday March 27th. I then phoned them again and the person at Park Appliance said not today. They said it would be more like Friday the 31st and told me. "... by the way mam, we will look at it and then we have to get permission to order a part for the door lock and then come a later time to install it." Which will be more like 1 to 2 weeks total!!

There are 5 people in my household and I can't use my washer! I am disabled due to cancer/leukemia. I can't go to the laundromat and use their washer! I am not physically able. I then re-phoned HHGREGG customer service and the agent apologized but, suggested that I pay for a Maytag repairman to come and repair my washer which she said it would cost between $150-$200 and then try to get reimbursed for my out of pocket cost. I find this totally UNACCEPTABLE! I have been lied to Over and Over again! Don't buy the WARRANTY!! It is VERY MISLEADING!

**Dennis of Brandon, FL on March 30, 2017**

Purchased a computer and extended warranty. The computer started shutting down. They sent a tech with a part to put it. It did not fix it. They put a program on the computer to measure the heat in the computer. It showed one hot symbol. They sent the tech again a few days later and another part. They ran the program again and had all kinds of fire signs on it. They said because it didn't shut down immediately as it was it was fine. The tech tried to tell them there was something still wrong. Warrantech people told him it was fine and to leave.

Two days later the computer literally blew up. It had fire and smoke coming out of it. Called HHGregg again and they said they would call back in one day. Now a week later we talked to the Vendor Relations Supervisor and was informed that they will only give us $517.99 back on a $739.99 purchase. Take it or leave it. We can

have a $222.00 store credit that can only be spent at their store. Explain there was nothing else we need -- just a desktop computer, which they no longer sell.

Asked to speak to her supervisor and she said she would pass on the message. Her attitude said "Don't hold your breath -- we got your money and there is nothing you can do about it." DON'T BUY ANY WARRANTIES FOR ANY ITEMS THAT DEALS WITH WARRANTECH or their parent company... They do not honor their warranties... Do not buy from hhgregg... They will hold you hostage to buy from store credits. Now I sit and wonder if we will ever see any of our money after the attitudes of these people.

### FACTS RELATING TO PLAINTIFF

28.    On or about June 4, 2016, Plaintiff purchased a LG Electronics, Inc. ("LG") refrigerator from H.H. Gregg store for $2,799.99 for use in her Glen Carbon, Illinois, home.

29.    On that same day, Plaintiff purchased a five year extended service plan to cover the purchased refrigerator for $350.00.

30.    Soon thereafter, the refrigerator became inoperable due to an apparent manufacturing defect in one of its component parts.

31.    Accordingly, immediately and within the five years covered by the ESP, Plaintiff contacted Warrantech customer service to request service or replacement under her plan.

32.    Contrary to the terms of the service plan, Defendants refused to assist with or pay for the repair or replacement of Plaintiff's refrigerator.  This was more than a mere inconvenience, as Plaintiff was dependent on the appliance for the safe storage of her family's refrigerated and frozen food items during the hot summer months after she purchased the refrigerator and ESP.

33.    Finally, after months-long efforts to obtain the assistance of Warrantech and H.H. Gregg, on or about April 5, 2017, the manufacturer, LG, processed a buyback for Plaintiff and refunded her money for the refrigerator.

34.     Thereafter, on or about April 24, 2017, Plaintiff requested the cancellation of her extended service plan and a full refund.

35.     In response, Plaintiff received only a partial refund check from H.H. Gregg for $256.16, despite Warrantech's refusal to honor the terms of its contract with her by failing to repair or replace her defective LG refrigerator.

36.     The experience of Plaintiff is not unique, as demonstrated by the anecdotes told by other members of the Class.  *See, e.g., hhgregg Consumer Complaints and Reviews,* Consumer Affairs, https://www.consumeraffairs.com/retail/hh_gregg.html (last visited June 13, 2018).

## CLASS ACTION ALLEGATIONS

37.     This action satisfies the prerequisites for maintenance as a class action provided in Fed. R. Civ. P. 23(a), as set forth below.

38.     *Class Definition.*   Plaintiff brings this action individually and on behalf of the following class of similarly situated persons (the "Class"), of which Plaintiff is a member:

> All natural persons domiciled in the United States or its territories who purchased a Warrantech extended service plan and whose requests for service of a product thereunder during the term of the manufacturer's warranty were denied.

Excluded from the Class are Defendants and any of its respective officers, directors or employees, the presiding judge, Class counsel and members of their immediate families, and persons or entities who timely and properly exclude themselves from the Class.

39.     *Illinois Subclass.*   In the alternative, Plaintiff brings this action individually and on behalf of a sub-class of Illinois consumers only who are members of the above-defined class.

40.     *Numerosity.*   The members of the Class are so numerous and geographically dispersed throughout the United States such that joinder of all members is impracticable.  Plaintiff believes that there are thousands of persons in the Class.  The exact number and identity of Class

members is unknown to Plaintiff at this time and can only be ascertained from information and records in the possession, custody or control of Defendants.

41.     *Commonality.*   There are questions of law or fact common to the Class including, *inter alia*, the following:

        a.     whether the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*., applies to the claims of Plaintiff and members of the Class and/or entitles them to relief;

        b.     whether a contract existed between Defendants on the one hand and Plaintiff and the Class on the other and the terms of that contract;

        c.     whether Defendants sell illusory extended service plans which include terms that effectively impose no obligations on Defendants;

        d.     whether Defendants made misleading representations about its extended service plans that would have deceived an objectively reasonable person;

        e.     whether Defendants' conduct, including the drafting and/or sale of its illusory extended service plans is unconscionable;

        f.     whether Plaintiff and the Class conferred a benefit on Defendants when they paid for their extended service plans and whether it would be unjust for it to retain such benefits under the circumstances alleged herein;

        g.     whether the Court has subject matter jurisdiction and whether venue in this district is proper;

        h.     whether Plaintiff and the members of the Class are entitled to their damages, including treble damages, and the appropriate measure thereof; and

        i.     whether equitable or injunctive relief is appropriate.

42.    *Typicality.*  The claims of Plaintiff are typical of the claims of the Class alleged herein.  Plaintiff and other members of the Class are all persons who purchased an extended service plan sold by Defendants and experienced a product failure within the coverage period of the manufacturer's original warranty.

43.    *Adequacy.*  Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel who are competent and experienced in the prosecution of complex and class action litigation.  The interests of Plaintiff are aligned with, and not antagonistic to, those of the Class.

44.    *Fed. R. Civ. P. 23(b)(2) Requirements.*  The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. Civ. R. P. 23(b)(2) exist, as Defendants have acted or has refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

45.    Defendants' actions are generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

46.    Defendants' uniform common course of conduct alleged herein makes declaratory relief with respect to the Class as a whole appropriate.

47.    *Fed. R. Civ. P. 23(b)(3) Requirements.*  This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3).  The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.

48.    The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation,

especially in view of the relatively modest amount of monetary, injunctive and equitable relief at issue for individual Class members.

49.     This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class.

## COUNT I

## (Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*)

50.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 49, *supra*, as though fully stated herein.

51.     This Count is brought on behalf of Plaintiff and other members of the Illinois Subclass members and on behalf of those Class members from other states that have enacted a uniform deceptive trade practices act in the same or substantially similar form as that described herein.

52.     At all times material hereto, there was in full force and effect an act commonly known as the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. ("ICFA").

53.     Section 2 of ICFA prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use of employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 ILCS 510/2], approved August 5, 1965, in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

54.     At all times material hereto, there was in full force and effect in this State an act commonly known as the Uniform Deceptive Trade Practices Act ("UDAP"), 815 ILCS 510/2 *et seq.*, incorporated by reference in Section 2 of ICFA, *supra.*

55.     The aforesaid acts and practices of Defendants constitute unfair or deceptive acts or practices prohibited by Section 2 of ICFA, including but not limited to the use or employment of deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of material fact, with intent that Plaintiff and the Class rely thereon. *See* 815 ILCS 505/2.

56.     The aforesaid acts and practices of Defendants further fall within the practices prohibited by Section 2 of the Uniform Deceptive Practices Act incorporated by reference in 815 ILCS 505/2, *supra*.

57.     By committing the acts alleged in this Complaint, Defendants have misled Plaintiff and the Class into purchasing extended service plans, in part or in whole, due to an erroneous belief that the ESPs provided coverage from the date of the product's purchase. Instead, Plaintiff and the Class paid for a deceptive, worthless, and illusory plan that effectively imposed no obligations on Defendants.

58.     As a direct and proximate result of the foregoing, Plaintiff and the Class purchased extended service plans from Defendants that they would not have purchased had the true characteristics been known to them.  Alternatively, Plaintiff and the Class lacked the information necessary to make an informed choice regarding their decision to purchase such ESPs, causing them to pay for a service plan that possessed negligible or *de minimis* value because they never come into effect.

59.     As a result of the foregoing, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## COUNT II

### (Breach of Contract)

60.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 49, *supra*, as though fully stated herein.

61.     When Plaintiff and the Class bought a product from H.H. Gregg, they entered into a contract with Defendants, wherein Plaintiff and members of the Class agreed to pay for an extended service plan.

62.     In exchange, Defendants agreed to help Plaintiff and the Class manage the cost and inconveniences of covered product failures by replacing or repairing the said product.

63.     Plaintiff and the Class performed their duties under the aforesaid contract by paying the purchase price of the extended service plan in full.

64.     Plaintiff and the Class were denied coverage for their product failures by Defendants despite Defendants' representation in the service agreement that coverage begins on the date of product purchase.

65.     By failing to repair product failures and/or refund the entire purchase price of the extended service plan, Defendants breached its contractual obligations to plaintiffs and the class.

66.     As a result of the foregoing, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## COUNT III

### (Unconscionability)

67.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 49, *supra*, as though fully stated herein.

68.     The ESPs are unconscionable because, as explained herein, their terms are illusory, which effectively impose no obligations on Defendants and provides no benefits to consumers.

69.     Defendants made deceptive and/or misleading representations regarding the ESPs that would have deceived an objectively reasonable person into believing the ESPs were valuable and that the consumers' purchases would be "protected" and/or that they would be entitled to coverage under the ESPs.

70.     Plaintiff and the members of the class would not have purchased the ESPs had they been fully informed regarding the above-referenced policies and procedures.

71.     As a result of the foregoing, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## COUNT IV

### (Unjust Enrichment)

72.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 49, *supra*, as though fully stated herein.

73.     Plaintiff and the Class conferred a benefit on Defendants by paying the full purchase price of the extended service plan.

74.     Defendants appreciated the benefits of such payments in the form of revenue received from Plaintiff and the Class.

75.     Furthermore, once the Plaintiff and the Class cancelled their extended service plan, Defendants kept a portion of the purchase price of the ESP despite having not provided any service to the purchaser whatsoever.

76.     Defendants' acceptance and retention of the aforesaid benefits under the circumstances alleged herein would be inequitable absent the repayment of such amounts to Plaintiff and the Class.

77.     As a result of the foregoing, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, prays for judgment in their favor and against Defendants and for the following relief:

A.      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, certifying the Class defined herein and designating Plaintiff as representative of the Class and her undersigned counsel as Class counsel;

B.      Awarding Plaintiff and the Class (1) their actual damages, (2) such exemplary damages as the Court may allow, and (3) the costs of this action together with reasonable attorneys' fees as determined by the Court;

C.      Awarding Plaintiff and the Class all allowable pre- and post-judgment interest on the foregoing awarded damages;

D.      Awarding Plaintiff and the Class equitable relief including, *inter alia*, a finding that the contracts they entered into are void and unenforceable and disgorgement of Defendants' ill-gotten gains;

E.       Granting appropriate injunctive and declaratory relief; and

F.     Awarding such other and further available relief and any other relief the Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Date:  July 9, 2018                             Respectfully submitted,

AMY JETT

By:     s/ William M. Sweetnam

William M. Sweetnam
Natasha Singh (*pro hac vice* admission pending)
SWEETNAM LLC
100 North La Salle Street, Suite 2200
Chicago, Illinois  60602
(312) 757-1888
wms@sweetnamllc.com
ns@sweetnamllc.com

*Attorneys for Plaintiff and the Class*